Thank you, your honors. My name is Dennis O'Brien. I represent the appellant in this case. When I first argued this issue in 1988 before the Sixth Circuit in the Al-Zaqqari case, we only had the Gardner approach to deal with and the traditional rules of maintenance and cure. The determination of the approach to be taken in this case will probably determine the case. After the Al-Zaqqari case was decided by the Sixth Circuit, this court came down with the Barnes opinion. So we had two well-defined approaches to be taken in addressing the collective bargaining agreement. As this court reiterated on October 3rd, that in deciding what approach to take, the courts are going to have to weigh trade-offs. And that is in the in-ray asbestos product litigation case that just came down two weeks ago. After the Barnes opinion, the Barnes approach was more or less superseded by the Townsend opinion by the Supreme Court, which addressed the maintenance and cure doctrine in the context of preemption. And the Supreme Court held that the ancient doctrine of maintenance and cure, more particularly the punitive damages aspect of it, had been around for a long time prior to the Jones Act, which was the statute that was being contended preempted the punitive damage element of maintenance and cure. And that gave rise to a new approach, which I would contend that Townsend did supersede Barnes as an approach to be considered in this case. And the approach that was utilized by this court in the asbestos case a couple weeks ago, that was a products liability ceiling case, not maintenance and cure. Maintenance and cure has been around since the 1100s, the laws of Oleron. That was a products liability case. And this court found that the maritime doctrines that it is better to give than to withhold the remedy unless required to withhold it by fixed and established rules, and that the courts were to exercise solicitude for the protective rights of the seaman. And those admiralty precepts predominated in that case. And this court held in choosing the approach, the bare metals approach, in that case it was a rules-based approach and a bare metals approach. The bare metals was more favorable to the seaman. This court held that the special solicitude for the protection of seaman or sailors is dispositive. And I would suggest that that special solicitude, which is basically the word of the court doctrine, would be dispositive in this case in applying the Townsend approach. As the Supreme Court stated in the Arguelles case that's been cited throughout this appeal at 400 U.S. 351, nothing in the Labor Management Relations Act assumed the roles served by the federal courts to be protective of the rights of seaman under that act. In other words, the Labor Management Relations Act is not designed to be protective of the rights of seaman as is this court's exercise of authority over it. Now the Townsend approach, the Townsend approach has been applied before. The Eighth Circuit applied it in the Doyle v. Graske case in 2009 at 579 F. 3898 when it's stated. And that was a case having to do with a passenger injury on a vessel, a cruise ship, or a recreational boat. But it was maritime law. And the court stated, the Eighth Circuit stated, applying the Townsend approach, we conclude that there is no established admiralty rule as there is with respect to punitive damages authorizing loss of consortium damages as a general matter. Okay? Here, there is an established admiralty rule as to quantifying maintenance and cure to be the actual living expenses of the seaman that has existed maybe longer than any other type of law that's being practiced in the United States courts today. Mr. O'Brien, you have just advised us that Townsend supersedes Barnes. Did you advise us a few minutes ago that Townsend supersedes Barnes? As an approach. I would consider it as an approach. It means it's more distinctly to the point. Barnes relied on traditional applications of maintenance and cure and Townsend zeroed in on preemption. And acknowledged that traditional maintenance and cure cannot be abrogated by a CBA, right? Correct. And as this court held in Barnes, an inadequate amount of maintenance would constitute an abrogation of the remedy. So what I'm trying to get at is how, if at all, has Townsend changed the game for us in this matter? Because it explicitly addresses when a statute can preempt a general maritime law maintenance and cure entitlement. How do you define abrogate? In this context, as the Rutherford District Court case held, which has been cited in circuit opinions, a maintenance rate that is inadequate abrogates the entitlement. So how do you say it's inadequate? Is it less than the actual expenses? Correct. So any rate that is less than the actual expenses would be an abrogation. Is that your position? It is, Your Honor. And in this case, the unearned wages or the overtime component was basically... So abrogation is essentially the same as reduction or diminution? In this context... Semantically? In this context, where any ambiguities are to be resolved in favor of the seaman and... Well, that kind of puts the rabbit in the hat. You're assuming an ambiguity, and I'm asking you about words that seem to me to be, if not starkly, dramatically different, at least quantitatively. The statements by this Court in Barnes and in prior opinions is that if there is an inadequate rate being paid, that it is an abrogation of the right to your actual expenses. Barnes does not say that diminution is abrogation. On the contrary, Barnes talks about, in the context of maintenance, that you can't completely eliminate this. But the next breath says, but we encourage people to negotiate about these things. How could it be sensible for this Court to have said in Barnes, please negotiate these things, if taking it down a penny from what you say is the actual expenses would amount to an abrogation? There would be no reason to negotiate ever, right? If an amount that is equal or surpasses the actual rate is negotiated, that would be... How would you even know that in advance? Your position is, if anything is less than what was actually spent. Who's got the foresight to say, you know what, I think Bob the sailor is going to spend $50, but Chuck, that guy, he always orders a bottle of Dom Perignon. How are you going to know that? You can't do that. As a ward of the Court, a seaman is entitled to individual treatment and not to be treated in a collective manner, as does the collective bargaining process. I can write to my question to you, Mr. O'Brien. How can it be the case that collective bargaining is uniformly to be disregarded in this context, the way you seem to suggest, when every circuit to have looked at it except us says, no, collective bargaining really matters and in fact should control. And even we in Barnes said, yeah, collective bargaining is a good thing, you should do that negotiating. How can it be the case that if there's individualized decision-making necessary, that collective bargaining would have any place at all? Because if a collectively bargained rate equals or exceeds the ward of the Court's individualized treatment as to the amount of maintenance or a formula, then it would be acceptable. What's the authority for that? Is there a case or a statute that says that or is that something you're submitting to us because it benefits your client? No, that was suggested in Barnes. As the Arguelles case stated, that the collective bargaining grievance machinery is an option that a seaman could use to enforce his wages, the collectively bargained rate would be an option available to a seaman to quantify the amount of maintenance payable. But even in Barnes, we don't say if the maintenance rate provided in the collective bargaining agreement is $1 less than what was actually spent, that that's bad. It talks about an $8 rate, which was at that time obviously inadequate, but it didn't necessarily say that any rate below actual expenses would be inadequate, did it? The last paragraph in Barnes said a seaman who can demonstrate an entitlement to more than the collectively bargained rate is entitled to the greater amount. The words abrogation and inadequate were not used in the same paragraph, but the last paragraph of Barnes states if a seaman's actual maintenance rate is shown to be greater than the... So in essence you're saying that maintenance, cure, and unpaid wages are not subject to collective bargaining because any rate that is not the actual rate would be impermissible. I'm saying that they could be subject to collective bargaining, however... As long as they pay what's actually spent? As long as they're accurate with regard to the individualized treatment that's to be accorded. Suppose the agreement in the collective bargaining agreement was the employer agrees to the actual rate. That that's part of the collective bargaining agreement. We'll do the actual rate. So I take it in that instance you'd have no claim, right? Yeah, pretty much. There'd be nothing. So let me ask you this. Is the essence of this suit just about the overtime because not getting the overtime doesn't bring it up to the actual rate? Right. I mean, we're talking about 50% reduction here. And unpaid wages are not maintenance, right? It's part of the maintenance and cure remedy. It's a third rate. It's according to the Ninth Circuit, at least, and some of the commentary I've read, they're pretty specific in saying that while unearned wages are sometimes included when people use the shorthand term maintenance and cure, maintenance is not unearned wages. It's something different. And cure is clearly different. It's medical expenses. But maintenance, as your opponents point out on page 9, I'm going to brief that, that's a living wage that's to be paid during the time of illness or recovery, while unearned wages are completely different because they only last until when the term of the voyage is going to end, right? It's a different thing, isn't it? Yeah, different measuring criteria, different elements. I just want to make sure we're clear. And Barnes was talking about maintenance. It wasn't talking about unearned wages, right? But it would carry over to the unearned wage context. You're saying analogously. It's the same remedy. But we're talking about conceptually distinct rights that are owed to a seaman. Is that right? Same body of law, different measuring criteria. Can I ask you a question, then? First off, what is it you're actually appealing here? Are you only appealing the unearned wages part of the district court's opinion? Yes. Okay. Then the next question is we can affirm on any basis, and at least the Griffin Fifth Circuit case said if overtime wages are speculative, then they need not be granted. Where in the record here is there any indication about what kind of overtime he would have earned? I noticed that it said without apparent support or citation that it would be basically double. Where in the record can we find what he would have made? Those records are part of Mr. Joyce's wages being basically double, but we never got to the damages portion. The question was where. Where in the record can we find anything having to do, something to tether ourselves to to say overtime would be part of, your argument is overtime should be part of unearned wages. Where is there any support for that in the record? I cited that in my brief. His lost overtime was quantified in this case, but we never got to the damages aspect of the case. That's why you don't have, but it's basically. Where in the record is it quantified? If we look at the appendix, where can we find the reference to this? It's not in the stipulated facts as far as I can tell. I'll give you the reference. You have reserved time for rebuttal, is that correct? Will you check it and respond when it's your turn on rebuttal? Thank you, Mr. O'Brien. I'm always loathe to correct a colleague on anything, but Judge Steward's one question leads me to see, confess that I used to sail quite a bit on Chesapeake Bay, and I can assure you that among the numerous bottles that my friends had, I don't have any on me. It's been a minute. A beer maybe. Good morning, Your Honors. May it please the Court. John Walsh for the Defendant Appellee, Merskline Limited. I'm going to address the Barnes v. Andover question, even in light of some of the questions that the Court has been asking the plaintiff appellant. Six circuit courts have disagreed with the holding in Barnes that a collectively negotiated maintenance rate, which the Court deems inadequate, should be disregarded and the seaman permitted to prove his actual food and lodging expenses. My argument is not that because it's six against one that the six should win. My argument is that the six other circuits are correct because it is unnecessary and a judicial overreach for the general maritime law to preempt a clause in a validly negotiated collective agreement unless there was something wrong with the process. In a sense, Barnes has been superseded by its own terms. The Barnes panel majority could not discern any inclination by the U.S. Supreme Court to step back from scrutinizing even union negotiated contracts in favor of seafarers as wards of the admiralty. But after Barnes was decided, the Supreme Court clearly demonstrated that seafarers should no longer look to the courts for special protection in injury and death cases, but should look to Congress and states. And by implication, they certainly can look to the powerful unions for their protection. I doubt that anyone, not even Mr. O'Brien, would argue that the ward of admiralty status of seafarers would permit a court under general maritime law to scrutinize each and every provision of a seafarer's collectively bargained agreement, such as the adequacy of wages, overtime allowances, vacation pay, working hours, rest periods, meals or lodging, just out of solicitude for the seafarer. The only reason that the maintenance provision is under scrutiny is that the Supreme Court has said in dictum that the right to maintenance may not be abrogated. We have to follow what the Supreme Court says, even in dictum. But Barnes v. Andover stands on a very flimsy foundation saying that the then $8 per day maintenance rate, which is now $16 per day, was an abrogation. The Supreme Court did not say that the maintenance rate had to be indexed for inflation. It just said don't abrogate it. Unquestionably, I will agree the rate is low and may not be adequate to cover a seafarer's meal and lodging expenses. But that cannot be looked in isolation. As Professor Schellenbaum wrote, maintenance is a small part of a very favorable package of remedies that seafarers have for injuries and illnesses. Railroad workers have the same remedies but do not receive maintenance payments. Please also consider that the maintenance remedy is broader than a worker's compensation remedy. A seafarer is entitled to maintenance for any illness that occurs on the vessel and does not have to prove causation between the illness and the service on the vessel. Please also consider that there is an element of double recovery to maintenance. Seafarers, like the rest of us, almost always pay their living expenses out of their wages, such as their meals and lodging. If maintenance is paid for those living expenses, recovery of wages in the Jones Act case is essentially a double recovery. When the Court decides that a collectively negotiated maintenance rate is inadequate and must be raised, the Court inches towards a worker's compensation remedy, but this time the employer does not get the usual tradeoff of not being sued in exchange for paying a portion of the wages. That is a legislative decision. The inadequacy argument is being made in the wrong form. It should be made either in the collective bargaining negotiations or to Congress. As Judge Jordan has pointed out, assuming that Barnes is upheld, how can the parties negotiate a rate in the collective agreement? Barnes did agree that the rate of maintenance could be negotiated in the agreement. A new rate was negotiated after Barnes, and that now is being challenged. Will we be here again in a few years to ask if a new rate after Barnes is upheld is appropriate? The suggestion has been that the rate be tied to the room rate that seafarers receive when they are in port and when they don't have board furnished. It usually happens when the ship goes into a shipyard and work is being done on the ship and the accommodations are not livable, and it comes out to about $74 a day. But this is an apples and oranges comparison. When the seafarers go ashore and get the room allowance, they are living in hotels and they are eating in restaurants. When they are ill or injured, they are home, not paying hotel bills, and they are eating home-cooked meals and not in restaurants. It also assumes that maintenance is the only remedy, and it is not. The seafarer has a remedy for lost wages and pain and suffering under the Jones Act and unseaworthiness. Mr. Walsh. Yes, sir. The CBA provides that unearned wages, as referred to in this agreement, shall be defined as base wages. That seems to limit the application of the definition to the CBA. Is there anything in the CBA that pertains specifically to the common law admiralty right to receive wages? You're talking unearned wages, is that correct, Your Honor? Yes. That's the only provision in the agreement that refers to unearned wages that I'm aware of, and I would think that would be sufficient to limit the unearned wages to the base wages. And why would you assume that? The Second Circuit in Padilla, the Ninth Circuit in Lipscomb and Gardner, they seem to indicate that if the shipping company wants to limit a right, it has to do so with real specificity and do it expressly. You said unearned wages are base wages, but by saying it's base wages, have you been sufficiently specific in saying, and it is not to include any component like overtime? Well, I think the Padilla case did not have the base wages language in the collective bargaining agreement. Different? I understand that. My question to you is, to the extent there's ambiguity, who does it fall on? It falls on the shipper, right? Not necessarily in a collective bargaining agreement, Your Honor. I would not agree with that. I mean, if ambiguity is still, what does Padilla mean? You're relying on it pretty heavily. You like it. But Padilla and Gardner, the ones you point to and say to us, these are right, you should be paying attention to these other circuits. They say if you want to limit a right which was generally available in maritime law, you have to, in your collective bargaining agreement, be sharp enough to do it expressly and specifically. So my question to you is, if there is ambiguity, does that not fall on the shipper? I don't think it does, Your Honor. And you have to look at the history. What do those decisions mean when they say that? You have to look at the history of unarmed wages. Unarmed wages go back for centuries, and they go back to a time when there was no overtime, when overtime was not being paid to the seafarer. And it was a custom and practice of the industry only to pay base wages. That is a term of art. Aren't unarmed wages just a form of paid sick leave? I'm sorry, Your Honor. Aren't unarmed wages just a form of paid sick leave? Basic leave? Paid sick leave. Paid sick leave. Yes, Your Honor, it is. And unarmed wages traditionally have always been the straight-time wages that the seafarer has earned,  There is no ambiguity there. Everybody understands what that means. If that's the case, there's not a historical roots or analog to overtime. Does this case present an occasion to even revisit barns? If that's something that over time has emerged in the context of shipping articles and is a modern concept, then isn't it necessarily a creature of contract? Your Honor, if we were five months ago, I would agree with that. But we have already gone down the barns path pretty far and it's been briefed pretty heavily. And I think the answer to the appeal in this case, if barns is overruled, we'll dispose of this case. Let me ask you something. There's an assumption that Jeff Cross's question gets a little bit out of my mind. There's an assumption underlying this that unarmed overtime, let's assume that unarmed wages is part of maintenance. And there are cases that suggest, or rather there are cases that suggest it's the third form, I think, as you put it. But the reason for that is pretty obvious in terms of the ward of the city, if you will, for the seller. Unearned overtime is a very, very different animal. So why should we assume that unearned overtime should be treated with the same kind of fidelity, if you will, as unarmed wages, even assuming that unarmed wages is part of unarmed maintenance? That's not part of what was necessary to sustain the seafarer, if he or she got ill. He, I guess it would be. Your Honor, I mean, that was the argument I made in the Padilla case in the Second Circuit, that unearned wages was a custom in effect. Unarmed overtime specifically. More specific. Specific to overtime. Overtime was never part of unearned wages, is what the argument was. And the Second Circuit, as Judge Jordan pointed out, said, well, you're ambiguous in your collective bargaining agreement because you haven't said base wages. And, you know, the industry understands what base wages means. It means the wages that are in the collective bargaining agreement without overtime. It's not base, otherwise you wouldn't have base in there. Exactly. Exactly. Even the Second Circuit there was looking to expectation damages. It was looking to what was in the contract, but also the practice between that particular seafarer and that shipping company. That, although not written, perhaps, is still in the nature of contract. And we're looking to whether this remedy is something that is rooted historically in ancient maritime law. You're saying it's not. Why then are we even talking about it as part and parcel of maintenance, cure, and unearned wages? Well, I think we're talking about it because if the court overrules Barnes v. Andover, then there's no question that, contrary to what the plaintiff appellant wants to do, that the court does not invade the collective bargaining agreement and tell the unions and the employers what you can't limit. In other words, unearned wages can be limited. Mr. O'Brien's argument it can't be. So we don't have to touch Barnes, right? Because Barnes is a maintenance case. This is an unearned overtime case. Barnes could continue to exist. And it could still be, from your point of view, a circumstance where a court should respect the negotiated terms between the represented seaman through their union and the employer. You're correct, Your Honor. You don't have to touch Barnes. But since we've been through the exercise, I think if you do touch Barnes, if you do overrule Barnes, it does dispose of the unearned wage argument in this case. But why does it? Because of the overtime issue. I mean, if overtime was never contemplated as part of the triumvirate common law expectations, why? Well, the plaintiff appellant is arguing that overtime must be included in unearned wages. I'm asking your position. And my position is the contract is entitled to regulate that, to limit the unearned wages to the base wages. So that's the difference in our positions. And if Barnes is overruled, that disposes of my argument in my favor, saying that, yes, the unearned wages can be limited. And the Second Circuit looked at this and said, overtime is part of full wages as historically understood, as long as it's not speculative and it represented a substantial part of the expected wage of the seaman, just the way, in fact, they cited our court's Shaw decision, like accumulated overtime, or the Ninth Circuit's Lipscomb decision about tips. Those are not base wages, but they are things which have been traditionally and rooted in general maritime law treated as unearned wages. Isn't that the line of reasoning that we got out of the Second Circuit and the Ninth Circuit and arguably out of our own circuit in Shaw? Exactly, Your Honor. And if we want to get to where you want to get, do we need to wrestle with Barnes? You don't have to. But how is it distinct, right? You're hearing questions about do we have to get to it or not. So I'm putting it to you. If unearned wages stand on the same footing as maintenance and cure as historically rooted in maritime law, how can we ignore the existence of Barnes and say, well, unearned wages are different because there's a contract element to them, so they're just not rooted in general maritime law? Is that the thinking? Well, the issue is can the court or can the parties limit unearned wages in any other than full wages? That's the issue before the court. That's no different than the Barnes question about maintenance. Can you limit your position has been and remains? Yes, we can limit maintenance, I'm arguing. I'm not disagreeing with you, Your Honor. I'm not disagreeing with you, but you can make a distinction. You can make a distinction, and the distinction is that in Barnes, Barnes held that the maintenance rate of $8 a day was so low as to be an abrogation. Now you're talking about how low you can go. That's a different question. The question is does unearned wages stand on the same footing as maintenance and cure, as a right traditionally enjoyed by seafarers, and therefore something which cannot be modified or abrogated, et cetera, et cetera, without dealing with Barnes, which says those rights rooted in general maritime law are special. They're different. They are different. My reading of Barnes may be different from your reading of Barnes, Your Honor. I'm not telling you what my reading is. I'm asking you to directly address what I hear questions come to you at about unearned wages. We could just say unearned wages, that's not maintenance and cure. I'm trying to get you to address what Barnes seems to be communicating about rights rooted in general maritime law are not unearned wages of that kind of right. If you're reading Barnes to say that the maintenance rate cannot be modified in the collective bargaining agreement, then you have to decide Barnes. I'm sorry. I'm not talking about modification. I'm not talking about abrogation in that sense. I'm just asking do unearned wages stand on the same footing as maintenance  That's correct, Your Honor. But the question is when can the quantum be regulated. Okay. I'm sorry. How do you define abrogate? I define abrogate as getting rid of it out the door. So you would disagree with the result in Barnes that $8 a day was way too low, but it was not abrogation because it was something? I'm arguing that the $8 a day is not an abrogation because you have to consider it in the context of all the CFR's rights to collect wages and pain and suffering and sue his employer. Would it be helpful if we defined abrogation? Yes, ma'am, it would. I don't understand your answer a moment ago. Is abrogation if they're not made whole? Abrogation means in my dictionary that it's totally wiped out, that it's gotten rid of, it's nullified. There is no maintenance. It can't mean that, right, because $8 is something more than zero, and in Barnes we said that's effectively an abrogation. So it's got to be something more. It can't just be all the way to null. It's got to be some concept of inadequacy, doesn't it? No, Your Honor, I think abrogation means abrogation. Because you only get into that if you isolate maintenance as the only remedy that the CFR has. Okay, well, then you're saying Barnes was wrong and we decided we understand that. But in the context of Barnes, as we use the word abrogation, it has to mean something more than zero because we were dealing with something more than zero, right? The town majority in Barnes said that $8 a day is an abrogation. I accept that, but I don't think it's correct. The Supreme Court didn't say you must index maintenance to inflation. Thank you, Your Honor. Thank you very much, Mr. Walsh. Mr. O'Brien. Thank you, Your Honor. In Barnes, this Court stated, We conclude that it is inconsistent with both the traditional doctrine of maintenance and cure and with our rejection of preemption of maintenance by the labor laws to hold that the maintenance rate set in the collective bargaining agreement is binding on a seaman who can show higher daily expenses. And the Court also said, We have determined that the $8 rate of maintenance set forth in the collective bargaining agreement is not binding on Barnes who proved that his actual expenses were in excess of that amount. Mr. O'Brien, I wanted to address, if you would, the question that Mr. Walsh was fielding about unearned wages, which is what this case is about, distinct from the maintenance at issue in Barnes, and specifically the question of whether or not we even have to address Barnes because this is unearned wages and it's different. We could just talk about unearned wages and not worry about Barnes. No, it's the same test because it's part of the triumvirate of the maintenance and cure remedy. The Fifth Circuit addressed it extensively in the Dowdell case, which I quoted to the Court. And this Court addressed the problems with reductions or elimination of the unearned wage remedy in the Luth case. It had to do with maintenance and cure, but it's the same precepts govern it. Even if we accept that for Barnes, that it covers unearned wages historically, that appears to mean base wages, you're asking that that be extended to something wholly new, that is, overtime, a modern concept and a concept of contract, aren't you? No, not really. What's the historical basis to say that overtime is a component of the remedies under ancient maritime law? The term of art is full wages, or what this Court used, actual wages that the seaman would have earned. But even for overtime, on page two of my reply brief, I make reference to an 1864 case cited by a defendant discussing overtime component of a seaman's wages. So the overtime component has existed for a long time, at least in the 1800s. But the term of art is full wages, or the actual wages a seaman would have earned. And to address Judge Ross' question, on page 17 we quantified the base wages and overtime wages, and the record support of that is on pages 149 to 158 of the appendix. I would urge the Court to read the Lundberg Washington State Court opinion following Barnes, because they, you know... Are you referring to Rutherford, mentioned in the 18-something-odd case, that talks about, on page two of the reply brief, it looks like it's Rutherford? No, no, page two of my reply brief is the Richard Matt. Okay. Can I just ask you, is it your position that even though Seafarer is a union member, because he's a ward of admiralty, he should have the benefit of a court overlooking a collective bargaining agreement and therefore be treated differently than every other union member? With regard to maintenance and share, you know... But then where does it stop? What if there's other types of benefits that he needs because he's overseas? I don't know if there's any other general maritime... Well, if you have the wage, you can have a wage claim, and the Supreme Court's already ruled on that, so collective bargaining cannot preempt that. And, you know, the Longshoremen and Harbor Workers Compensation Act is a codification of maritime law. But the point there, I guess, is that Congress has acted under those circumstances, and the Supreme Court told us, be mindful of whether Congress has acted in this area. Right, but Congress only acts when it modifies the general maritime law, and this Court held in Barnes that it takes more to preempt general maritime law than it would a congressional enactment. James, again, I said a question before we close. Just at the end of your other argument, I'd ask you where in the record there's some evidence of what kind of overtime you could have expected to work. Did you find something? Yeah. It's on page 17 of our initial brief and on pages 149 to 158 of the appendix. His pre-illness overtime records are there, and we would apply the formula that Judge Leisure devised in Padilla to determine his lost overtime with reasonable certainty. Thank you very much, Mr. O'Brien. All right, thank you. Thank you to the counsel. We will take a matter under advisement, I would ask.